UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| DAVID L. KEESLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:18-cv-00166-SLC |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, *sued as Nancy A.* | ) | |
| *Berryhill, Acting Commissioner of SSA,* | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff David L. Keesler appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] (DE 1). For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order.

## I. FACTUAL AND PROCEDURAL HISTORY

Keesler applied for DIB and SSI in August 2014, alleging disability as of December 15, 2012.[2] (DE 10 Administrative Record ("AR") 265-75). Keesler was last insured for DIB on March 31, 2015 (AR 13, 305), and therefore, he must establish that he was disabled as of that date with respect to his DIB claim. *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (explaining that a claimant must establish that he was disabled as of his date last insured in

---

[1] All parties have consented to the Magistrate Judge. (DE 13); *see* 28 U.S.C. § 636(c).

[2] Keesler had filed prior applications for DIB and SSI. (AR 10, 305).

order to recover DIB benefits). Keesler's application was denied on initial consideration and on reconsideration. (AR 181-214).

A hearing was held on November 10, 2016, before Administrative Law Judge Terry Miller (the "ALJ"), at which Keesler, who was represented by counsel; Keesler's mother; and a vocational expert testified. (AR 30-88). On April 13, 2017, the ALJ rendered an unfavorable decision to Keesler, concluding that he was not disabled because despite the limitations caused by his impairments he could perform a significant number of unskilled, light exertional jobs in the economy. (AR 10-22). The Appeals Council denied Keesler's request for review (AR 1-5), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

Keesler filed a complaint with this Court on June 8, 2018, seeking relief from the Commissioner's final decision. (DE 1). In this appeal, Keesler argues that the ALJ: (1) failed to evaluate at step three whether Keesler medically equaled Listing 11.03, non-convulsive seizures; (2) improperly evaluated the opinion of Dr. Shivam Dubey, Keesler's treating psychiatrist; and (3) failed to adequately account for Keesler's moderate limitations in concentration, persistence, or pace in the hypothetical posed to the vocational expert at step five. (DE 18 at 5-17).

At the time of the ALJ's decision, Keesler was 41 years old (AR 22, 90); had a seventh grade education without special education classes (AR 296); and had past work experience as a stocker at a large retail store work and as a bus person in a restaurant (AR 296, 386-87). Keesler alleges disability due to the following impairments: syncopal episodes/dizziness/pseudoseizures, hypertension, sinus tachycardia, obesity, hypothyroidism, obstructive sleep apnea, depressive

2

disorder, and anxiety. (DE 18 at 2).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## III. ANALYSIS

### A. *The Law*

Under the Act, a claimant is entitled to DIB or SSI if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

3

mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment or combination of impairments meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App'x 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[3] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520, 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868 (citation omitted).

---

[3] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

### B. The Commissioner's Final Decision

On April 13, 2017, the ALJ issued the decision that ultimately became the Commissioner's final decision. (AR 10-22). At step one of the five-step analysis, the ALJ found that Keesler had not engaged in substantial gainful activity since his amended alleged onset date. (AR 15). At step two, the ALJ found that Keesler had the following severe impairments: syncopal episodes/dizziness/pseudoseizures; hypertension, sinus tachycardia, and obesity; hypothyroidism; obstructive sleep apnea; depressive disorder; and anxiety. (AR 13). At step three, the ALJ concluded that Keesler did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 14).

Before proceeding to step four, the ALJ determined that Keesler's assertion of a complete inability to work was not consistent with the medical evidence and other evidence of record. (AR 19). The ALJ assigned him the following RFC:

> [T]he claimant has the [RFC] to perform "light" work as defined in 20 CFR 404.1567(b) and 416.967(b) (i.e. lifting, carrying, pushing, and pulling up to 20 pounds occasionally and 10 pounds frequently; sitting up to at least six out of eight hours in an eight hour workday; and, standing/walking, in combination, up to [at] least six out of eight hours in an eight hour workday), except he would have the additional following limitations: only occasional climbing of ramps and stairs, and balancing; never climbing ladders, ropes, or scaffolds[;] needs to avoid all exposure to hazards (i.e. operational control of dangerous moving machinery, unprotected heights, slippery uneven moving surfaces, and use of moving vehicles). Mentally, the claimant is limited to understanding, remembering, and carrying out simple, routine repetitive tasks, consistent with unskilled work (defined as occupations that can be fully learned within a short period of time at no more than 30 days, and requires little or no judgment to perform simple tasks), with the ability to sustain those tasks throughout the eight hour workday, without frequent redirection to task; the ability to use judgment in making work-related decisions is limited to making only simple work-related decisions; no fast-

> paced work or work requiring a regimented pace of production.
> As to social interactions, he can interact with supervisors,
> coworkers, and the general public only on a superficial basis,
> defined as occasional and casual contact with no prolonged
> conversations and contact with supervisors that is short, but allows
> the supervisors to give instructions.

(AR 17). Based on the RFC and the vocational expert's testimony, the ALJ concluded at step four that Keesler could not perform any of his past relevant work. (AR 20). At step five, the ALJ found that Keesler could perform a significant number of unskilled, light exertional jobs in the economy, including small products assembler, laundry folder, and cleaner. (AR 21). Therefore, Keesler's applications for DIB and SSI were denied. (AR 22).

## C. The ALJ's Step-Three Finding

Keesler challenges the ALJ's finding at step three that he did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Specifically, Keesler contends that the ALJ erred by failing to discuss whether his pseudoseizures[4] medically equal Listing 11.03, non-convulsive seizures. For the following reasons, the Commissioner's final decision will be remanded so that the ALJ can reconsider his step-three finding and minimally articulate whether Keesler medically equals Listing 11.03.

"Under a theory of presumptive disability, a claimant is eligible for benefits if [he] has an impairment that meets or equals an impairment found in the Listing of Impairments." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing 20 C.F.R. § 404.1520(d); 20 C.F.R § 404, Subpt. P, App'x 1)). "The listings specify the criteria for impairments that are considered

---

[4] "Pseudoseizures, also known as psychogenic seizures, nonepileptic seizures, and paraoxysmal nonepileptic episodes (PNES), resemble epileptic seizures but are not attributable to epilepsy or abnormal electric activity in the brain. No single cause of psychogenic seizures has been identified, but they are typically attributed to an underlying psychological disturbance." *Boiles v. Barnhart*, 395 F.3d 421, 422 (7th Cir. 2005) (citing Ronald P. Lesser, *Treatment and Outcome of Psychogenic Nonepileptic Seizures*, Epilepsy Currents, Nov. 2003, at 198)).

6

presumptively disabling." *Id*. (citing 20 C.F.R. § 404.1525(a)). "A claimant may also demonstrate presumptive disability by showing that [his] impairment is accompanied by symptoms that are equal in severity to those described in a specific listing." *Id*. (citing 20 C.F.R. § 404.1526(a)).

Specifically, Listing 11.03 requires detailed documentation of seizures that occur more frequently than once a week, in spite of at least three months of prescribed treatment. 20 C.F.R. § 404, Subpt. P, App'x 1 § 11.03; *see Barnett*, 381 F.3d at 668; (AR 403). The claimant must also show "alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interferences with activity during the day." 20 C.F.R. § 404, Subpt. P, App'x 1 § 11.03; *see Barnett*, 381 F.3d at 668; (AR 403).

"In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett*, 381 F.3d at 668 (citing *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2002); *Scott v. Barnhart*, 297 F.3d 589, 595-96 (7th Cir. 2003); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)). That is, "an ALJ should mention the specific listings he is considering and his failure to do so, if combined with a 'perfunctory analysis,' may require a remand." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (citations omitted).

Here, at step three the ALJ discussed Listing 12.04, affective disorders, and Listing 12.06, anxiety-related disorders, but did not mention Keesler's pseudoseizures, which he found to be a severe impairment at step two. That is, the ALJ failed at step three to identify Listing 11.03, non-convulsive seizures, by name, or analyze whether Keesler's pseudoseizures medically equaled this Listing. *See Barnett*, 381 F.3d at 668 ("The ALJ never identified by name the

listing relevant to [the claimant's] disability claim."); *Brindisi ex rel. Brindisi*, 315 F.3d at 786 ("[T]he ALJ's opinion does not even mention the specific listings under which it considered [the claimant's] impairments."); *Allen v. Barnhart*, 408 F. Supp. 2d 598, 602 (N.D. Ill. 2006) ("We have no way to determine if the ALJ applied the appropriate listing because he does not refer to any . . . ."). As such, the ALJ's step-three consideration whether Keesler's pseudoseizures equaled Listing 11.03 was nonexistent, that is even *less* than "cursory and perfunctory." *Allen*, 408 F. Supp. 2d at 602. It is unclear, then, from the ALJ's decision what impact the medical evidence of Keesler's pseudoseizures had on the ALJ's step-three determination or whether the ALJ even considered this evidence and Listing 11.03 at step three. *Brindisi ex rel. Brindisi*, 315 F.3d at 786 ("[T]he ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do." (citing *Stephens v. Heckler*, 766 F.2d 284, 288 (7th Cir. 1985))). This makes the ALJ's step-three finding about Keesler's pseudoseizures "devoid of any analysis that would enable meaningful judicial review." *Id*.

The Commissioner concedes that the ALJ erred at step three both by failing to identify Listing 11.03 by name and by failing to give more than a perfunctory analysis of Listing 11.03. (DE 19 at 7-8). The Commissioner also concedes that the ALJ further erred by claiming that Keesler never argued that his impairments met or equaled a particular listing, when Keesler did, in fact, argue in a post-hearing brief that his pseudoseizures medically equaled Listing 11.03. (DE 19 at 7-8; *see* AR 14-17, 393-96). Nevertheless, the Commissioner contends that these errors are all harmless because the ALJ's step-three finding is supported by the Disability Determination and Transmittal forms completed in February 2015 by Dr. J. Sands and Dr.

8

Mangala Hasanadka, the state agency physicians, which indicated that Keesler was not disabled. (DE 19 at 8 (citing AR 148-59, 176-77)).

It is true that an ALJ may rely on the opinions of the state agency doctors as to whether a claimant meets or equals a listing at step three and provide little explanation, so long as there is no contradictory evidence in the record. *Ribaudo*, 458 F.3d at 584. Here, however, Dr. Dubey's treatment note in March 2016 and his medical source statement in December 2016—both of which post-date the Disability Determination and Transmittal forms—conclude that Keesler was disabled due to, at least in part, his seizures. (AR 626, 806-09).

Moreover, when completing the Disability Determination and Transmittal forms, the state agency doctors never considered Keesler's diagnosis of pseudoseizures because this diagnosis post-dates these forms. (*See* AR 414, 626, 765, 809). The Commissioner argues that because the state agency doctors were aware when completing the forms that Keesler suffered from a seizure condition, it makes no difference that his seizures were later determined to be pseudoseizures, rather than seizures of a neurological origin. (DE 19 at 8).

But the state agency doctors could have viewed Keesler's seizure condition differently had they seen evidence of a pseudoseizures diagnosis. *See, e.g.*, *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (finding error where new evidence "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment by a non-examining physician"). When considering Keesler's history of "black-outs," Dr. Hasanadka wrote that there was "[n]o objective testing to support any neuro conditions" (AR 158), which could suggest a discounting of Keesler's seizure condition due to a lack of supporting neurological evidence. But just as "epileptic seizures can render a person disabled . . . it follows that pseudoseizures, which can

9

produce the same symptoms, can also be disabling." *Ritchie v. Astrue*, No. 1:07-cv-1349-WTL-TAB, 2009 WL 196350, at *2 (S.D. Ind. Jan. 22, 2009) (citing *Boiles*, 395 F.3d at 421); *see generally Rebrook v. Astrue*, 2010 WL 2233672, at *20 (N.D.W.V. May 14, 2010) (finding that the ALJ improperly used the lack of a positive EEG, CT, or MRI as evidence to support a denial of a claimant's claim of disability based on pseudoseizures).

Admittedly, the ALJ did discuss Keesler's pseudoseizures later in his analysis *after* rendering his step-three finding. (AR 25). Thus, the ALJ did not ignore Keesler's pseudoseizures altogether. In doing so, the ALJ stated that "the evidence does not show that these pseudoseizures occur with such severity or frequency that they are disabling." (AR 25); *see Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010) ("There is no requirement of . . . tidy packaging; . . . we read the ALJ's decision as a whole and with common sense." (citations omitted)).

But Listing 11.03 requires documentation of seizures that occur more frequently than *once a week*, in spite of at least three months of prescribed treatment. 20 C.F.R. § 404, Subpt. P, App'x 1 § 11.03. Here, the record indeed reveals that Keesler experienced seizures in excess of one per week despite many months of prescribed treatment. (*See, e.g.*, AR 346 (one to four a day), 411-14 (daily to one to four per week), 417 (10 to 12 times a day), 422 (several times a day to one per week), 452-53 (one to two a day), 511 (daily), 545-56 (several per week), 634 ("getting worse & longer"), 636 (three to four a day), 640 (every other day), 758 (several times a day), 770 (multiple times a day)). The record also reveals that Keesler at times experienced loss of consciousness during a seizure (AR 582, 770, 774), and that after a seizure, he complained of headaches, fatigue, and that he usually falls asleep (AR 48-49, 316, 346, 634), all of which is

10

evidence relevant to Listing 11.03. *See, e.g., Boiles*, 395 F.3d at 425-26 (finding that the ALJ erred by concluding that the claimant's condition was not severe enough to equal a listing where the claimant experienced severe fatigue and pain after a pseudoseizure).

Considering this evidence, the ALJ erred at step three by failing to mention Listing 11.03, non-convulsive seizures, and by failing to analyze at step three in more than a perfunctory manner whether Keesler's pseudoseizures medically equaled Listing 11.03. The omission of any discussion of Keesler's pseudoseizures in conjunction with the step-three listings "frustrates any attempt at judicial review." *Brindisi ex rel. Brindisi*, 315 F.3d at 786. Consequently, this case will be remanded so that the ALJ may properly analyze at step three and adequately articulate whether Keesler's pseudoseizures medically equal the criteria of Listing 11.03, particularly with respect to the evidence relevant to "alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interferences with activity during the day."[5] 20 C.F.R. § 404, Subpt. P, App'x 1 § 11.03; *see, e.g., Delgado v. Colvin*, No. 3:12-CV-53 JVB, 2013 WL 2431160, at *12 (N.D. Ind. June 4, 2013) (remanding case to the ALJ to review the record evidence and address the issue of whether the claimant's pseudoseizures met or medically equaled Listings 11.02 or 11.03).

---

[5] Since this case is being remanded on the basis of Keesler's step-three argument, the Court need not reach his remaining arguments. Having said that, the Court has briefly considered Keesler's assertion that the ALJ improperly considered Dr. Dubey's opinion and that the case should be remanded for calculation and payment of benefits on this basis. (DE 18 at 17; DE 24 at 11). "[A]n award of benefits is appropriate only where all factual issues have been resolved and the record supports a finding of disability." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 356-67 (7th Cir. 2005) (internal quotation marks and citation omitted); *see Burroughs v. Massanari*, 156 F. Supp. 2d 1350, 1367-68 (N.D. Ga. 2001) (articulating that the court may remand the case for an award of DIB where the Commissioner "has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt"). Here, the Court cannot conclude that all of the factual issues have been resolved with respect to Keesler's assertions of error as to Listing 11.03 or the opinion of Dr. Dubey and that the record supports a finding of disability. *See, e.g., Boiles*, 395 F.3d at 417 (declining to simply reverse the case and award benefits where the record needed to be more factually developed concerning the claimant's pseudoseizures).

## IV. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order. The Clerk is directed to enter a judgment in favor of Keesler and against the Commissioner.

SO ORDERED.

Entered this 25th day of March 2019.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge
